UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UBS SECURITIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY M. LEITNER,<br><br>Defendant. | Case No. 1:17-cv-01365-RA |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY 10022
Phone: (212) 940-8800
Fax: (212) 940-8776

**TABLE OF CONTENTS**

**Pages**

PRELIMINARY STATEMENT ........ 1
STATEMENT OF FACTS ........ 2
ARGUMENT ........ 3
I. UBS SECURITIES HAS RAISED A "LIKELIHOOD OF SUCCESS" OR A "SERIOUS QUESTION" ON THE MERITS OF ITS CLAIM WARRANTING INJUNCTIVE RELIEF. ........ 3
A. Leitner and UBS Securities Have No Contract Permitting Arbitration. ........ 3
B. Defendant Is Not A "Customer" of UBS Securities Under Rule 12200 ........ 4
II. THE REMAINING FACTORS WARRANT INJUNCTIVE RELIEF. ........ 7
A. UBS Securities Will Suffer Irreparable Harm Absent Injunctive Relief. ........ 7
B. Enjoining The Arbitration Is In The Public Interest. ........ 8
C. The Balance Of The Equities Favors Enjoining The Arbitration. ........ 8
CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Technologies, Inc. v. Communications Workers of America*,
475 U.S. 643 (1986)....................3

*Citigroup Global Markets, Inc. v. Abbar*,
761 F.3d 268 (2d Cir. 2014)....................4, 5

*Citigroup Global Markets Inc. v. VCG Special Opportunities Master Fund Ltd.*,
No. 08-CV-5520 (BSJ), 2008 WL 4891229 (S.D.N.Y. Nov. 12, 2008)....................3, 8

*Citigroup Global Mkts. Inc. v. VCG Special Opportunities Master Fund Ltd.*,
598 F.3d 30 (2d Cir. 2010)....................3, 8

*Credit Suisse Secs. (USA) LLC v. Chia*,
No. CV 13-3085DSF, 2013 WL 12114009 (C.D. Cal. Oct. 18, 2013)....................6

*Credit Suisse Secs. (USA) LLC v. Sims*,
No. H-13-1260, 2013 WL 5530827 (S.D. Tex. Oct. 4, 2014)....................6

*Goldman, Sachs & Co. v. North Carolina Mun. Power Agency No. One*,
No. 13 Civ. 13139 (PAC), 2013 WL 6409348 (S.D.N.Y. Dec. 9, 2013)....................8

*Herbert J. Sims & Co., Inc., v. Roven*,
548 F. Supp. 2d 750 (N.D. Cal. 2008)....................6

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002)....................3

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
337 F.3d 125 (2d Cir. 2003)....................7

*Morgan Keegan & Co., Inc. v. Silverman*,
706 F.3d 562 (4th Cir. 2013)....................6

*Suntrust Banks, Inc. et al. v. Turnberry Capital Management, LP, et al.*,
566 Fed. App'x 32 (2d Cir. May 15, 2014)....................4, 5, 6, 7

*Suntrust Banks, Inc. et al. v. Turnberry Capital Mgmt., LP*,
945 F. Supp. 2d 415 (S.D.N.Y. 2013)....................4, 5, 6, 7

*Telenor Mobile Commc'ns AS v. Storm LLC*,
584 F.3d 396 (2d Cir. 2009)....................3

*UBS Secs. LLC v. Voegeli*,
684 F. Supp. 2d 351 (S.D.N.Y. 2010)....8

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468 (1989)....8

*Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*,
661 F.3d 164 (2d Cir. 2011)....3

**Other Authorities**

Fed. R. Civ. P. 65(a) ....1

Plaintiff UBS Securities LLC ("UBS Securities") respectfully submits this memorandum of law in support of its motion, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, for a preliminary injunction enjoining defendant Gregory M. Leitner ("Defendant" or "Leitner") from arbitrating claims against UBS Securities before the Financial Industry Regulatory Authority ("FINRA"). The requested relief should be granted because Leitner is not a customer of UBS Securities, and has no relationship (contractual or otherwise) with UBS Securities giving rise to an obligation to arbitrate.

**PRELIMINARY STATEMENT**

It is well-settled that arbitration is a matter of contract and that a party cannot be required to arbitrate a dispute that it has not agreed to submit to arbitration. Courts in this Circuit and elsewhere routinely grant injunctions and enjoin arbitrations in the absence of an agreement to arbitrate, finding *per se* irreparable harm if parties are required to arbitrate claims without their consent. UBS Securities has not agreed to arbitrate disputes with Defendant, expressly or otherwise, and its motion for a preliminary injunction should be granted.

Despite the lack of an arbitration agreement, Defendant commenced an arbitration against UBS Securities on or about February 8, 2017 entitled *Gregory M. Leitner vs. UBS Securities LLC*, FINRA Case No. 17-00350 (the "Arbitration").[1] Defendant alleges in the Arbitration that he purchased an ETRACS 2x Monthly Leveraged Long Alerian MLP Infrastructure Index ("MLPL") security on a "public exchange" through his "self-directed" retirement account, and that those alleged facts sufficiently established a "customer" relationship under Rule 12200 of FINRA's Code of Arbitration Procedure (the "Code") to require UBS Securities, the underwriter

[1] A copy of the Statement of Claim in the Arbitration is attached as Exhibit A to the Declaration of David L. Goldberg dated February 23, 2017 (the "Goldberg Decl.") in Support of the Motion for a Preliminary Injunction.

of that MLPL security, to arbitrate. Rule 12200 requires FINRA members such as UBS Securities to arbitrate disputes with their "customers." Compl. at ¶ 27; Goldberg Decl., Ex. B.

Courts in this Circuit and elsewhere have addressed the issue raised on this motion and have explicitly rejected the broad definition of the term "customer" proposed by Leitner here. These courts have enjoined arbitrations commenced against upstream distributors of securities where the defendant investor did not maintain a brokerage account with the plaintiff broker-dealer and/or the relevant securities were purchased directly from a third-party broker. *See infra* at pp. 5-9. UBS Securities respectfully requests that the Court should follow the authority of these cases and enjoin Defendant from arbitrating his claims against UBS Securities.

## STATEMENT OF FACTS

Defendant is a corporate attorney who resides in the State of Tennessee. Defendant allegedly maintained a retirement account with an unnamed brokerage firm. Ex. A at ¶ 26. Defendant claims that he purchased MLPL beginning in April 2015 through his "self-directed" retirement account. *Id.* at ¶¶ 26-29. MLPL is a publicly-traded security issued by UBS AG and traded on the NYSE Arca Exchange that was underwritten by UBS Securities. Compl. at ¶¶ 22-23. Notably, Defendant does not allege any contractual relationship with UBS Securities, does not allege that he maintained a brokerage account with UBS Securities and does not allege that he purchased MLPL directly from UBS Securities.

UBS Securities received notice that it was named in the Arbitration on February 8, 2017 when Leitner provided a copy of the Statement of Claim filed in the Arbitration (the "SOC") to UBS Securities. Compl. at ¶ 19. This action and motion followed promptly thereafter.

## ARGUMENT

### I. UBS SECURITIES HAS RAISED A "LIKELIHOOD OF SUCCESS" OR A "SERIOUS QUESTION" ON THE MERITS OF ITS CLAIM WARRANTING INJUNCTIVE RELIEF.

A plaintiff seeking a preliminary injunction must establish "irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor." *Citigroup Global Markets Inc. v. VCG Special Opportunities Master Fund Ltd.*, No. 08-CV-5520 (BSJ), 2008 WL 4891229 (S.D.N.Y. Nov. 12, 2008) (enjoining FINRA arbitration brought by non-customer), *aff'd*, 598 F.3d 30 (2d Cir. 2010). UBS Securities is likely to succeed on the merits of its claim for relief because it has no obligation under Rule 12200 to arbitrate any dispute with Leitner, and has (at a minimum) presented a "serious question" on the merits of its claim that warrants preliminary injunctive relief.

#### A. Leitner and UBS Securities Have No Contract Permitting Arbitration.

Courts have long held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986); *see also Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.,* 661 F.3d 164, 171 (2d Cir. 2011) ("In the absence of an agreement by the parties to submit the matter of arbitrability to the arbitrator, the question of whether or not a dispute is arbitrable is one for the court").

Leitner does not allege any contract with UBS Securities requiring the arbitration of disputes between the parties to this suit. *See* Goldberg Decl., Ex. A. Indeed, Leitner has no contractual relationship with UBS Securities and did not maintain a brokerage account with UBS Securities. *Id*. Rather, according to the SOC, Leitner purchased the securities through his "self-directed" retirement account, which is not alleged to have been affiliated with UBS Securities. *Id*. Thus, there is no contractual or other business relationship between UBS Securities and Leitner potentially giving rise to an obligation to arbitrate.

**B. Defendant Is Not A "Customer" of UBS Securities Under Rule 12200.**

UBS Securities, as a member of FINRA, is obligated to arbitrate certain claims pursuant to Rule 12200 of the Code when requested by a "customer." Compl. at ¶ 27; Goldberg Decl., Ex. B. Leitner is decidedly not a "customer" of UBS Securities under Rule 12200, however. The Second Circuit squarely and explicitly addressed the parameters of "customer" status under Rule 12200 in two recent cases, definitively rejecting application of Rule 12200 to facts such as those alleged here. *See, e.g., Citigroup Global Markets, Inc. v. Abbar*, 761 F.3d 268 (2d Cir. 2014); *Suntrust Banks, Inc. et al. v. Turnberry Capital Mgmt., LP*, 945 F. Supp. 2d 415 (S.D.N.Y. 2013), *aff'd*, 566 Fed. App'x 32 (2d Cir. May 15, 2014).

In *Abbar*, the Second Circuit ruled that the defendant's status as a customer of Citigroup Global Markets Ltd. ("Citi UK") did not permit him to compel arbitration against its corporate affiliate, Citigroup Global Markets Inc. ("Citi NY"). The Second Circuit affirmed an injunction prohibiting arbitration against Citi NY under Rule 12200 even though the factual record in *Abbar* established that some of the bankers who advised the defendant investor and assisted in the management of his investments (which had been purchased directly from Citi UK) had been employed at Citi NY. Despite those significant connections with the FINRA-registered broker-

dealer (which are not even alleged here), *Abbar* established a "bright-line rule" and held that a "customer under FINRA Rule 12200 is one who, while not a broker or dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member." *Id.* at 275-76. The Second Circuit dictated further that: "*The only relevant inquiry* in assessing the existence of a customer relationship is whether an account was opened or a purchase made; parties and courts need not wonder whether myriad facts will coalesce into a functional concept of the customer relationship." *Id.* (emphasis added). Moreover, "[t]o the extent and in the event such a bright-line rule allows for evasion and abuse, we think that sufficient relief can be afforded by FINRA's power to discipline its members and adjust its rules." *Id.*

Similarly, in *Turnberry Capital Management*, the Southern District rejected an attempt by the downstream purchaser ("Turnberry") of trust certificates that had been underwritten by SunTrust Robinson Humphrey, Inc. ("SunTrust"), a FINRA-registered broker-dealer, and sold to Turnberry by a third-party broker. Turnberry argued, as Leitner argues here, that it was the "customer" of the underwriter for purposes of Rule 12200, and that the broker through which it made its purchase was "merely a conduit." *Turnberry*, 945 F. Supp. 2d at 424. The court disagreed, holding that Turnberry did not have a customer relationship with SunTrust sufficient to implicate Rule 12200. *Id.* at 424-425. The court held that "the mere fact that Turnberry consulted materials prepared by SunTrust does not entail that Turnberry received investment advice from SunTrust, nor does it evidence any other direct relationship sufficient to make Turnberry SunTrust's 'customer.'" *Id.* at 422.

The Second Circuit, in a summary order that predated *Abbar* by three months, affirmed in all respects. *Suntrust Banks, Inc. et al. v. Turnberry Capital Management, LP, et al.*, 566 Fed.

App'x 32 (2d Cir. May 15, 2014). The Second Circuit, considering the district court's determination as to the issue of arbitrability *de novo*, found that the district court had "correctly held that Turnberry is not a customer of [SunTrust] under FINRA Rule 12200." *Id.* at 34.

Courts in other Circuits have likewise reached the conclusion that FINRA members cannot be compelled to arbitrate with investors who did not maintain brokerage accounts or directly purchase securities or services. *See Morgan Keegan & Co., Inc. v. Silverman*, 706 F.3d 562, 567-68 (4th Cir. 2013) (enjoining FINRA arbitration where defendant-investors bought securities from third-party broker and then commenced arbitration against investment bank that underwrote and distributed those securities); *see also Herbert J. Sims & Co., Inc., v. Roven*, 548 F. Supp. 2d 750 (N.D. Cal. 2008) (enjoining FINRA arbitration brought by an investment advisor and his clients because, among other things, the defendants "did not invest directly with plaintiff, or with an agent or representative of plaintiff" and did not "[have] an account or written agreement with plaintiff or plaintiff's agents"); *Credit Suisse Secs. (USA) LLC v. Chia*, No. CV 13-3085DSF (AJWx), 2013 WL 12114009 (C.D. Cal. Oct. 18, 2013) (enjoining FINRA arbitration brought by a non-institutional investor who purchased notes through accounts with a third-party because "that a path of money can be traced from [defendant] to plaintiffs…does not make [defendant] a purchaser of plaintiffs' services" and "under that theory, a person buying groceries would be considered the customer of the electric company that powers the grocery store"); *Credit Suisse Secs. (USA) LLC v. Sims*, No. H-13-1260, 2013 WL 5530827 (S.D. Tex. Oct. 4, 2014) (enjoining FINRA arbitration brought by defendant who purchased securities underwritten by the plaintiff because the defendant purchased the securities through an account with a third-party and did not have a contract with the plaintiffs).

Here, the facts in favor of injunctive relief are arguably even stronger than in the above-mentioned cases because Leitner fails to allege that he communicated with UBS Securities or any affiliate, fails to allege that he had a contractual relationship with UBS Securities or any affiliate, and fails to allege that he had an account with UBS Securities or any affiliate. Moreover, much like the defendant in *Turnberry*, Leitner's bald assertion that he consulted materials prepared by UBS Securities do not render him a "customer" for purposes of FINRA Rule 12200. UBS Securities is therefore likely to succeed on the merits of its claim that it has no obligation to arbitrate with Defendant, and has (at least) raised substantially a "serious question" on the merits of its claim to warrant preliminary injunctive relief.

## II. THE REMAINING FACTORS WARRANT INJUNCTIVE RELIEF.

In addition to the foregoing, the remaining factors governing the grant of injunctive relief in this Circuit strongly weigh in favor of UBS Securities' request for a preliminary injunction to enjoin Defendant from arbitrating his claims. *First*, forcing UBS Securities to arbitrate claims without its consent is *per se* irreparable harm. *Second*, it is in the public interest to protect parties who have not consented to arbitration from being forced to arbitrate. *Third*, the balance of the equities weighs in favor of UBS Securities.

### A. UBS Securities Will Suffer Irreparable Harm Absent Injunctive Relief.

Without an injunction, UBS Securities will be forced to arbitrate claims it never agreed to arbitrate. Courts in this Circuit have held that a party necessarily suffers irreparable harm if "forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003). Additionally, allowing the arbitration to go forward deprives UBS Securities of its "right to have [its] claims adjudicated in a court of law, rather than in an arbitral forum to

whose jurisdiction it has not consented." *UBS Secs. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010) (enjoining arbitration of non-customer claims). Accordingly, UBS Securities will suffer irreparable harm if it is forced to arbitrate Defendant's claims.

**B. Enjoining The Arbitration Is In The Public Interest.**

It is well-settled that protecting a party from arbitrating claims that it did not consent to arbitrate is in the public interest. *See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478 (1989) ("[T]he FAA does not require parties to arbitrate when they have no agreed to do so."); *Goldman, Sachs & Co. v. North Carolina Mun. Power Agency No. One*, No. 13 Civ. 13139 (PAC), 2013 WL 6409348, at *8 (S.D.N.Y. Dec. 9, 2013) (public interest in favor of arbitration "only applies when the parties have agreed to arbitration"). Because UBS Securities did not agree to arbitrate, it is in the public interest to enjoin Defendant from forcing it to do so.

**C. The Balance Of The Equities Favors Enjoining The Arbitration.**

Defendant would suffer no harm if a preliminary injunction is granted, as he had no right to arbitrate in the first place, and the delay in the final adjudication of UBS Securities' claim on the merits is not likely to be substantial, especially given that the securities purchases at issue date from early 2015. *See Citigroup Global Markets Inc. v. VCG Special Opportunities Master Fund Ltd.*, No. 08-CV-5520 (BSJ), 2008 WL 4891229 (S.D.N.Y. Nov. 12, 2008) (in enjoining a FINRA arbitration, the court noted that "if the court were to deny the preliminary injunction motion, [plaintiff] would be forced to expend time and resources to defend itself in an arbitration to which it may ultimately be determined not to have been a proper party, and any award would be unenforceable"), *aff'd*, *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30 (2d Cir. 2010). Moreover, Defendant would remain free to arbitrate any claims he may possess against the broker-dealer from whom he purchased the MLPL security in

question. By contrast, if preliminary injunctive relief is denied, UBS Securities will immediately be forced to expend resources in the defense of the Arbitration even though it never agreed to arbitrate disputes with Defendant. Therefore, the balance of the equities supports granting a preliminary injunction.

## CONCLUSION

For all the aforementioned reasons, UBS Securities respectfully requests that its motion should be granted and that the Court should preliminarily enjoin the Arbitration pending the determination of its claims on the merits.

Dated: February 24, 2017

KATTEN MUCHIN ROSENMAN LLP

/s/ David L.Goldberg

David L. Goldberg
Margaret J. McQuade
575 Madison Avenue
New York, New York 10022
Phone: (212) 940-8800
david.goldberg@kattenlaw.com
margaret.mcquade@kattenlaw.com
*Attorneys for UBS Securities LLC*